```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Donna Lennon

    v.                                      Civil No. 15-cv-014-JD
                                              Opinion No. 2015 DNH 153

Carolyn Colvin,
Acting Commissioner,
Social Security Administration

O R D E R

Donna Lennon seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for social security disability insurance benefits and supplemental security income. In support, Lennon argues that the Administrative Law Judge ("ALJ") erred in determining the onset date of her disability and erred in his residual functional capacity assessment. The Acting Commissioner moves to affirm.

Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background

Lennon applied for social security benefits in May of 2012, alleging a disability since May 1, 2006. She was forty-two years old in 2006 at the time she alleges she became disabled. She has a high school education and has worked as a part-time bookkeeper and secretary.

In 2006, Lennon was treated for hip pain and occasionally took Vicodin for pain. A bone scan in August of 2007 showed areas of arthritis and some degenerative changes in her lower lumbar spine. At her yearly examination in November of 2009, Lennon reported that she was exercising and active, although she had joint pain that she attributed to arthritis. A year later, Lennon complained of constant chronic joint pain. She was referred to a pain clinic where she was prescribed Percocet.

After experiencing chest pains, Lennon was diagnosed with chronic obstructive pulmonary disease in June of 2011. A CT scan of her hip in September of 2011 showed no change since June. Lennon continued to have hip pain and pain in other joints. She began taking Flurbiprofen as her providers wanted her to reduce the use of narcotic medication.

In August of 2012, Jonathan Jaffe, M.D., reviewed Lennon's records for the initial disability determination. Dr. Jaffe found that Lennon's physical ability was at the light exertional level with some postural limitations.

In September of 2012, Lennon, who is a smoker, was diagnosed with emphysema, and she began treatment for emphysema and depression. Lennon also reported pain in her hips, hands, knees, and ankle but also reported that she was not taking Flurbiprofen. She was prescribed Cymbalta for depression and Lorazepam for anxiety. By April of 2013, Lennon's depression and anxiety had improved and were stable.

An administrative hearing was held in August of 2013. Lennon chose to proceed without an attorney representing her. Lennon said that she was unable to work because of osteoarthritis and difficulty with depression and anxiety. Lennon also noted that she had been injured in a car accident in 1978 or 1979.

Explaining the reason for her alleged disability, Lennon said that she could not sit or stand for long periods, that she ached all of the time, and that her depression was overwhelming her. She also said that she lived with her seventeen year old daughter, was able to drive and shop, and could prepare meals. A vocational expert testified about jobs Lennon could do.

The ALJ concluded that Lennon had severe impairments due to osteoarthritis but that her depression and anxiety did not cause more than minimal limitations. He found that she retained the residual functional capacity to do light work with a sit or stand option, with some postural limitations, and some limitations on repetitively using her hands. Based on that functional capacity, the ALJ found that Lennon was not disabled. The Appeals Council denied her request for review.

## Discussion

Lennon contends that the decision denying her benefits should be reversed and remanded because the ALJ failed to properly determine the onset date of her impairments under Social Security Ruling 83-20. She also contends that the ALJ improperly assessed her residual functional capacity by failing to have her records reviewed by a psychiatrist or psychologist. The Acting Commissioner moves to affirm on the grounds that

4

Lennon misunderstands SSR 83-20, that the record evidence does not support an onset date of disability before her last insured date, and that the ALJ properly assessed her depression and anxiety.

The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled.  20 C.F.R. § 404.1520.  The claimant bears the burden through the first four steps of proving that her impairments preclude her from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the ALJ determines whether work that the claimant can do, despite her impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding.  Seavey, 276 F.3d at 5.

A.  SSR 83-20

SSR 83-20, Titles II and XVI:  Onset of Disability, 1983 WL 31249 (S.S.A. 1983), provides guidance for determining when a disability began, known as the onset date, particularly if the evidence of the onset date is ambiguous.  As interpreted in this district, in a Title II case for disability insurance benefits "SSR 83-20 ordinarily requires the ALJ to consult a medical advisor before concluding that a claimant was not disabled as of

her date last insured." Fischer v. Colvin, 2014 WL 5502922, at *5 (D.N.H. Oct. 30, 2014). That rule does not apply, however, when the ALJ has determined that the claimant is not presently disabled. Id. at n.15; Wilson v. Colvin, 17 F. Supp. 3d 128, 142-43 (D.N.H. 2014).

In this case, the ALJ found that Lennon had "not been under a disability, as defined in the Social Security Act, from May 1, 2006, through the date of this decision . . . ." Because the ALJ found that Lennon was not presently disabled, there was no need to find a nonexistent onset date. See Wilson, 17 F. Supp. 3d at 142-43. Therefore, SSR 83-20 does not apply to the circumstances of this case, and the ALJ did not err in failing to consult a medical advisor to establish an onset date.

B.  Residual Functional Capacity Assessment

Lennon challenges the ALJ's finding that her residual functional capacity was not affected by her depression and anxiety. She argues that the ALJ was required to obtain the opinion of a psychiatrist or psychologist to evaluate her mental functional capacity. In the absence of an opinion, she contends, the ALJ's residual functional capacity assessment is impermissibly based on his lay opinion. The Acting Commissioner argues that the ALJ's assessment was taken from the treatment

6

notes in the medical record and was not an impermissible lay medical opinion.

In making the residual functional capacity assessment at Step Four, the ALJ found that Lennon retained the ability to perform light work except that she required the option to sit or stand, was only occasionally able to do certain postural and climbing activities, and had to avoid repetitive motion with her hands. The ALJ did not assess Lennon's claimed impairments due to depression and anxiety at Step Four because he determined at Step Two that those impairments did not cause anything more than minimal limitations. The ALJ explained that there was no medical evidence in the record from Lennon's alleged onset date, May 1, 2006, through her last insured date, June 30, 2009, that she had depression or anxiety.[1] Further, the ALJ explained, the recent medical record showed that her depression and anxiety had improved with medication and counseling and cited record evidence to support that finding.[2]

---

[1] To be eligible for benefits under Title II, disability insurance benefits, a claimant who is no longer insured must show that she was disabled on or before her last insured date. 42 U.S.C. § 423(c).

[2] Eligibility for supplemental security income under Title XVI is not dependent on the claimant's insured status. See Moreau v. Colvin, 2015 WL 1723230, at *2 (D. Me. Apr. 14, 2015).

As a lay person, an ALJ is "not qualified to interpret raw medical data in functional terms." Nguyen, 172 F.3d at 35; Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). For that reason, an expert generally is necessary to provide a functional capacity assessment based on medical data. Manso-Pizarro, 76 F.3d at 17. Nevertheless, an ALJ can "render[] common-sense judgments about functional capacity based on medical findings, as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment." Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990); accord Couture v. Colvin, 2015 WL 3905273, at *5 (D.N.H. June 25, 2015); Pelletier v. Colvin, 2015 WL 247711, at *17 (D.R.I. Jan. 20, 2015).

In this case, the ALJ relied on the treatment notes of Dr. Shawn Sutton, Lennon's primary care physician, and Lennon's own reports to determine that Lennon's depression and anxiety were not severe.[3] Dr. Sutton's notes state that Lennon had begun

---

[3] Lennon mistakenly charges that the ALJ relied on "nonexistent records" to evaluate the degree of her psychological impairment. The records the ALJ cites in his decision are part of the administrative record. To the extent Lennon faults the ALJ for not having treatment records from her counselor, Priscilla Thompson, her criticism is misplaced. The burden was on Lennon to prove that she was disabled by providing evidence of her disability. Further, the ALJ wrote to Thompson requesting her treatment records for Lennon, but Thompson did not reply.

counseling with Priscilla Thompson and was taking Cymbalta for depression and taking Lorazepam as needed for anxiety. Six weeks later, in November of 2012, Dr. Sutton's notes show that Lennon was much improved with medication although she was having sadness about her mother's death as the holidays approached. The notes state that Lennon's report was consistent with the update from her counselor, Thompson. In April of 2013, Lennon again reported that she was much better due to Cymbalta.

The ALJ did not interpret raw medical data to assess Lennon's residual functional capacity. Instead, the ALJ relied on Lennon's own report of her status to her primary care physician, which was confirmed by her counselor's report to her physician, to find that any impairment due to depression or anxiety was not severe. As such, the ALJ did not find that Lennon had a severe psychological impairment and then attempt to assess her psychological date in functional terms without an expert's opinion. Because the record supports the ALJ's finding, it is affirmed.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 9) is denied. The Acting Commissioner's motion to affirm (document no. 10) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

／s／ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

August 4, 2015

cc: Judith E. Gola, Esq.
    T. David Plourde, Esq.